Vincent J. KROCKA, Plaintiff–
Appellant, Cross–Appellee,

v.

CITY OF CHICAGO, an Illinois munic-
ipal corporation, et al., Defendants–
Appellees, Cross–Appellants.

Nos. 98–2250, 98–2478 and 98–3880.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 2000.
Decided Feb. 8, 2000.

508

Terrance A. Norton (argued), Chicago–Kent College of Law, Chicago, IL, for Vincent J. Krocka in docket Nos. 98–2250 and 98–3880.

James M. Chesloe, Willow Springs, IL, for Vincent J. Krocka in docket No. 98–2478.

Jean Dobrer (argued), Brian L. Crowe, Office of Corporation Counsel, Appeals Division, Chicago, IL, for Defendants–Appellees, Cross–Appellants.

Before FLAUM, EASTERBROOK and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Vincent J. Krocka filed suit against the City of Chicago, Chicago Police Department ("CPD"), and several individual decisionmakers, (the "Defendants"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; 42 U.S.C. § 1983; and state tort law. The district court granted partial summary judgment in favor of each party on the ADA claim, granted summary judgment in favor of Krocka on the § 1983 claim, and dismissed Krocka's state law claim under Fed. R. Civ. Pro. 12(b)(6). A jury returned a verdict against Krocka on the remaining ADA issue, and the district court entered judgment in favor of the Defendants on the ADA claim. For the reasons stated herein, we affirm.

## I. BACKGROUND

Vincent Krocka began working for the Chicago Police Department as a police offi-

cer in the early 1980s and has consistently received good performance evaluations. In 1990, Krocka was diagnosed with severe depression and began taking Prozac to alleviate his condition. Krocka's psychological condition improved and his performance evaluations continued to be good.

In 1992, CPD learned that Krocka was taking Prozac and placed him on medical leave pending the outcome of physical and psychological evaluations to determine his fitness for continued duty as a police officer. The evaluating physicians determined that Krocka exhibited no symptoms of psychological illness and was experiencing no side effects from taking Prozac. In addition, it was confirmed that Krocka was being monitored by a physician while he was taking Prozac. The evaluating physicians concluded that Krocka was fit for duty, and, pursuant to CPD policy, he was allowed to return to work on the condition that he participate in the Department's Personnel Concerns Program ("PCP").

Officers in the PCP are closely monitored by CPD officials to ensure that there are no problems with their job performance. PCP monitors check in with officers several times during each shift and frequently accompany officers on radio calls. Placement in the PCP is typically reserved for officers with disciplinary problems. CPD's policy is to put all officers on psychotropic medication in the PCP because they are deemed to have "significant deviations from an officer's normal behavior." Pursuant to CPD policy, Krocka would remain in the PCP for as long as he was taking Prozac. It was the opinion of Krocka's doctors that he would be on Prozac for the rest of his life.

About a year after being placed in the PCP, Dr. Bransfield, one of CPD's doctors, ordered Krocka to submit to a blood test to determine the level of Prozac in his blood. Krocka submitted to the test which revealed that he was on Prozac. Krocka never denied being on Prozac and had supplied all of his medical records to CPD that confirmed this fact.

In 1995, Krocka filed a complaint against the Defendants alleging that placing him in the PCP solely because he was taking Prozac was a violation of the ADA and that the blood test was a violation of his Fourth Amendment rights that subjected the Defendants to liability under 42 U.S.C. § 1983. Krocka also filed a number of pendent state law claims, including a claim for intentional infliction of emotional distress ("IIED").

The district court granted Krocka summary judgment on the Fourth Amendment issue, finding that the test for Prozac in his blood was unreasonable because it was not taken to discover information that CPD did not already have. The district court then found that CPD did not regard Krocka as disabled and granted the Defendants summary judgment on that issue. The district court also concluded that assignment to the PCP, a program typically associated with disciplinary actions and carrying a degree of stigma, was an adverse job action and granted summary judgment on this issue to Krocka. The district court next found a dispute of material fact as to whether Krocka was actually disabled and denied summary judgment to both parties on that issue. Krocka voluntarily dismissed his state law claims with the exception of his claim for IIED. The district court dismissed Krocka's IIED claim under Fed. R. Civ. Pro. 12(b)(6). The district court then set the remaining issues for a bifurcated trial. In the first phase the jury was to determine whether Krocka was "actually disabled" under the ADA. In the second phase the jury was to determine the amount of damages for the Fourth Amendment violation as well as the damages for an ADA violation in the event that the jury found Krocka to be disabled.

In Phase I, the jury found that Krocka was not disabled. In Phase II, the jury awarded him $200 for the Fourth Amendment violation under 42 U.S.C. § 1983. The district court then denied Krocka's motion for attorney's fees because it found

that Krocka was not a prevailing party on the ADA claim and that the victory on the § 1983 claim was too small to warrant an award of attorney's fees. The district court also ordered that each side bear its own costs. Both parties now appeal.

## II. DISCUSSION

Krocka appeals the following issues: 1) the district court's grant of summary judgment to the Defendants on the issue of whether CPD regarded him as disabled; 2) the district court's denial of his motion for a new trial; 3) the district court's dismissal of his pendent state law claim for IIED; and 4) the district court's denial of his request for attorney's fees. The Defendants cross-appeal the district court's decision requiring that each side bear its own costs. We address each of these issues below.

### A. KROCKA'S DISABILITY

In order to make out a claim under the ADA, an individual must first show that he is a "qualified individual with a disability." 42 U.S.C. § 12112. A "qualified individual" is one who "can perform the essential functions of the employment position" in question. 42 U.S.C. § 12111(8). In this case, it is undisputed that Krocka has at all times been able to perform the duties of a Chicago police officer. He is thus a "qualified individual" for purposes of the ADA.

Under the ADA, a disability is:

(A) a physical or mental impairment that substantially limits one or more of the major life activities . . .;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Krocka's ADA claim is based on the first ("actually disabled") and third ("regarded as disabled") prongs of this definition. The district court concluded on summary judgment that CPD did not regard Krocka as disabled, and a jury determined that Krocka

was not actually disabled. Thus, Krocka was found not to be an "individual with a disability" who is covered by the protections of the ADA, and the district court entered judgment against him on his ADA claim.

### 1. Actual Disability

After the jury returned its verdict finding that Krocka was not actually disabled under the ADA, Krocka moved for judgment as a matter of law or in the alternative for a new trial. The district court denied both of these motions. Krocka now alleges that the district court erred in denying him a new trial because the jury's verdict was against the manifest weight of the evidence. We review the district court's decision to deny a new trial for "a clear abuse of discretion." *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1067 (7th Cir.1999).

To show that an individual has an actual disability under the ADA, he must demonstrate that he 1) has an "impairment" that 2) "substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). An impairment is "any physiological disorder, cosmetic disfigurement, or anatomical loss affecting one of the body's systems, *or any mental disorder.*" *Harrington v. Rice Lake Weighing Sys., Inc.*, 122 F.3d 456, 459 (7th Cir.1997) (emphasis added); 29 C.F.R. § 1630.2(h). "[M]edically diagnosed mental conditions" are impairments under the ADA. *Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1059 (7th Cir.1998). Because Krocka's severe depression is a medical condition diagnosed by a health professional, it qualifies as an impairment under the ADA. *See Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1061 (7th Cir.2000) ("In some circumstances, major depression can be a covered disability under the ADA."). However, not all impairments are disabilities for purposes of the ADA. Krocka must also show that his depression substantially limits a major life activity. *See id.* ("It is not

enough ... to demonstrate that [the plaintiff] suffers from depression.... [S]he must also demonstrate in the record that her depression substantially limits her ability to perform a major life activity.").

To be "substantially limited" means that "the individual is either unable to perform, or significantly restricted as to the condition, manner or duration under which the individual can perform, a major life activity as compared to an average person in the general population." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506 (7th Cir. 1998); 29 C.F.R. § 1630.2(j)(1)(i), (ii). To make this determination, a court must consider the individual's ability to perform major life activities "notwithstanding the use of a corrective device." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2149, 144 L.Ed.2d 450 (1999). In other words, if an impaired individual employs measures to mitigate that impairment, such as taking medication or using a prosthetic device, the individual must be evaluated taking into account the ameliorating, or aggravating, effects of the measures on his ability to perform a major life activity.

In this case, Krocka contends that his depression substantially limits his ability to perform the major life activity of working. In order to show a substantial limitation on his ability to work, an individual must demonstrate that his impairment significantly restricts "the ability to perform either a class of jobs or abroad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *see Schneiker*, 200 F.3d at 1061. Krocka asserts that his depression affects his ability to work in that he is more irritable, less able to concentrate, and more prone to fatigue than the average police officer. He argues that these effects are substantial limitations on his ability to work as a police officer.

The record does not support Krocka's contention. Krocka has been a police officer for almost twenty years. During that time he has consistently received good performance evaluations, although he has occasionally received disciplinary citations. While Krocka's depression may have affected his interactions with others, it does not appear to have impacted his ability to perform the duties of a Chicago police officer. Furthermore, as noted above, we are to evaluate Krocka's condition taking into consideration the ameliorating effects of the medication he is taking to control that condition. Krocka acknowledges that when taking Prozac he exhibits no symptoms of depression and is able to perform the duties of his job adequately. The district court did not abuse its discretion in declining to grant Krocka a new trial as there is ample evidence from which the jury could have reasonably concluded that Krocka is not substantially limited in the major life activity of working and, therefore, is not actually disabled under the ADA.

### 2. "Regarded As" Disabled

Krocka also argues that he was disabled under the "regarded as" prong of the ADA definition. *See* 42 U.S.C. § 12102(2)(C). He contends that the district court erred in granting summary judgment to CPD on this issue. A district court is to grant summary judgment only where no genuine issue of material fact exists regarding a particular issue. *Harrington*, 122 F.3d at 458. In making this determination, the court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review the district court's grant of summary judgment *de novo*. *Harrington*, 122 F.3d at 458.

The "regarded as" prong of the ADA's disability definition is intended to provide a remedy for discrimination

based on misperceptions about the abilities of impaired persons. As we have previously stated:

> Many ... impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence. Such people, objectively capable of performing as well as the unimpaired, are analogous to capable workers discriminated against because of their skin color or some other vocationally irrelevant characteristic.

*Vande Zande v. State of Wisc. Dept. of Admin.*, 44 F.3d 538, 541 (7th Cir.1995). The Supreme Court has noted that in order to make out a claim under the "regarded as" prong, "it is necessary that a covered entity entertain misperceptions about the individual." *Sutton*, 119 S.Ct. at 2150. These misperceptions may take the form of believing "either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment, when, in fact, the impairment is not so limiting." *Id.*

We do not find evidence in the record to support the contention that CPD suffered under either of these misperceptions regarding Krocka's ability to work as a police officer. As noted above, Krocka's clinically diagnosed severe depression is an impairment under the ADA. There is ample evidence in the record that CPD was aware of Krocka's severe depression. Therefore, it is a reasonable inference in favor of Krocka that CPD regarded him as having the impairment of severe depression. However, there is no evidence in the record that CPD perceived Krocka as having an impairment he did not in fact possess. Therefore, he cannot make out a claim under the first type of misperception described above.

Krocka's claim is more appropriately classified under the second type of misperception—that CPD regarded his impairment as substantially more limiting than it truly is. Krocka's primary evidence of this mistaken belief is that CPD required him to participate in the PCP as a condition of his employment as a police officer. Krocka argues that his impairment was completely corrected by medication and that his placement in the PCP reflected CPD's mistaken belief that his depression acted as a significant limitation on his ability to perform his job and thus required that he be intensively supervised. However, after becoming aware of his impairment, CPD allowed Krocka to continue working as a police officer, without any restrictions on the type of duties he could perform, his ability to carry a weapon, or any other aspect of his work. Participation in the PCP entailed additional monitoring of Krocka but does not appear to have affected his duties or responsibilities as a police officer in any way.

It is apparent from these facts that CPD did not consider Krocka substantially limited or restricted in his *ability* to do his job, and this is what Krocka must show in order to prove that CPD regarded him as disabled. Placement in the PCP may have been an inappropriate response or an overreaction to Krocka's impairment. However, this is evidence that CPD took an adverse and unjustified employment action against Krocka because of his impairment. It is not evidence that CPD regarded that impairment as substantially limiting, and, thus, it is insufficient to show that CPD regarded Krocka as disabled. As the Supreme Court noted in *Sutton*, the ADA only provides protection from adverse employment actions for individuals with disabilities. Employers do not run afoul of the ADA when they make employment decisions based on physical or mental characteristics that are not impairments or that are "limiting, but not substantially limiting" such that they do not rise to the level of a disability under the ADA definition. *Sutton*, 119 S.Ct. at 2150. Krocka has provided evidence that his employer took an adverse employment action against him. However, he has provided insufficient evidence that his employer regarded him as disabled. Therefore,

he has not shown that he is an individual with a disability who can bring a claim under the ADA. *See Harrington*, 122 F.3d at 461 ("The notion that Rice Lake must have fired Harrington because it regarded him as disabled and that it plainly regarded him as disabled because it fired him is attractive but circular—it lacks a causal antecedent.").

Krocka further argues that the fact that CPD required him to undergo a medical evaluation and to continue to be supervised by a physician is evidence that CPD regarded him as disabled. We have stated that where inquiries into the psychiatric health of an employee are job related and reflect a "concern[ ] with the safety of . . . employees," the employer may, depending on the circumstances of the particular case, require specific medical information from the employee and may require that the employee undergo a physical examination designed to determine his ability to work. *See Duda*, 133 F.3d at 1060. The position of Chicago police officer certainly presents significant safety concerns, not only for other CPD employees but for the public at large. It was entirely reasonable, and even responsible, for CPD to evaluate Krocka's fitness for duty once it learned that he was experiencing difficulties with his mental health. CPD did not make broad and unfounded assumptions about Krocka's fitness for duty based on his mental illness or the medication he was taking to mitigate that condition. Instead, it performed an individual evaluation of his particular situation and determined that he was capable of working as a Chicago police officer.

The steps taken to reassure an employer that an employee is fit for duty where there is a legitimate concern about an employee's ability to perform a particular job are not proof in a case such as this one that the employer regarded the employee as disabled. The results of that evaluation, however, may indicate the employer's perception of the employee's ability to function on the job and thus provide some evidence that the employer regarded the employee as disabled. In this case CPD determined after its evaluation of Krocka that he was able to perform the duties of a police officer, the job he desired to perform. Therefore, CPD did not consider him substantially limited in the major life activity of working and did not regard him as disabled. *See Sutton*, 119 S.Ct. at 2152 (affirming dismissal of ADA claim where petitioners did not show that their employer regarded them as substantially limited in the major life activity of working because the employer did not consider petitioners' myopic vision to be a disqualification for performing the job of airline pilot even though this impairment restricted the type of piloting job petitioners could hold).

CPD was aware of Krocka's mental impairment and took an adverse employment action against him because of it. However, Krocka has not presented sufficient evidence to demonstrate a genuine dispute of material fact as to whether CPD regarded him as disabled. Therefore, the district court did not err in granting summary judgment to the Defendants on this issue.

**B. TRIAL ISSUES**

 Krocka next argues that the district court erred in declining to grant him a new trial on the ground of unfair prejudice. A district court may grant a new trial "if the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir.1992). We review the district court's decision concerning the granting of a new trial for a clear abuse of discretion. *Id.*

 Krocka first argues that he was prejudiced because the district court erroneously allowed the Defendants to elicit on cross-examination a derogatory comment Krocka had made regarding the city attorney that implicated her gender. Krocka argues that this comment was more preju-

dicial than probative and should have been excluded under Fed.R.Evid. 403. However, it is clear from the context of the cross-examination that the Defendants elicited this information in order to impeach Krocka's assertion that he no longer had a bad attitude toward women and no longer used bad language. The district court did not abuse its discretion in allowing this statement to be used to impeach Krocka. *See* Fed.R.Evid.608(b).

Krocka next contends that he was prejudiced by the district court's decision to bifurcate the trial into two phases—one to determine whether he was actually disabled under the ADA and the other to determine damages. The district court has considerable discretion to order the bifurcation of a trial, and we will overturn this decision only upon "a clear showing of abuse." *Houseman v. United States Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir.1999). The district court may bifurcate a trial provided that this ruling 1) serves the interests of judicial economy or is done to prevent prejudice to a party; 2) does not unfairly prejudice the non-moving party; and 3) does not violate the Seventh Amendment. *See id.*; Fed. R. Civ. Pro. 42(b).

In this case, the district court bifurcated the trial for the appropriate reason of judicial economy, and Krocka does not allege that his Seventh Amendment rights were violated. Therefore, we only consider whether Krocka was unfairly prejudiced by the district court's decision. Krocka argues that he was prejudiced by this decision because he was not allowed to present evidence concerning the PCP during the first phase of the trial. The district court excluded evidence on this issue because it was not relevant to the determination of whether Krocka was actually disabled. Krocka does not appeal this evidentiary ruling but argues that had the trial not been bifurcated, he would have been able to present evidence concerning the PCP to the jury as relevant to the issue of damages. We cannot conclude

that Krocka was prejudiced by the district court's decision to bifurcate his trial simply because that decision had the result of excluding evidence that was not relevant to the issue presented during the first phase of the trial. Krocka does not persuasively explain how the inclusion of this admittedly irrelevant evidence would have affected the jury's outcome on the issue of whether he was actually disabled. Therefore, we conclude that the district court did not abuse its discretion in deciding to bifurcate Krocka's trial.

Because we conclude that the district court did not abuse its discretion in making either of these trial rulings, we also conclude that the court did not abuse its discretion in concluding that Krocka was not unfairly prejudiced by its rulings and was, therefore, not entitled to a new trial.

## C. STATE LAW CLAIM

Krocka also argues that the district court improperly dismissed his state law claim for intentional infliction of emotional distress ("IIED"). The district court found Krocka's IIED claim preempted by the Illinois Human Rights Act ("IHRA") and dismissed that claim under Federal Rule of Civil Procedure 12(b)(6). We review the dismissal of a claim under Fed. R. Civ. Pro. 12(b)(6) *de novo*. *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 502 (7th Cir.1998).

The IHRA prohibits employment discrimination based on a person's handicap. 775 ILCS 5/1–101, *et seq.* The IHRA preempts all state law claims "seeking redress for a 'civil rights violation' within the meaning of [that] statute." *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 203 Ill.Dec. 454, 639 N.E.2d 1273, 1276 (Ill.1994). However, where a course of conduct states an independent state law claim, that independent claim is not preempted by the IHRA. That is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not "furnish[ ] the

legal duty that the defendant was alleged to have breached," the IHRA does not preempt a state law claim seeking recovery for it. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 227 Ill.Dec. 98, 687 N.E.2d 21, 23 (1997) (holding that the plaintiff stated independent state law tort claims for assault, battery and false imprisonment that were not inextricably linked to her claim of sexual harassment).

In this case, Krocka based his IIED claim on several statements made by CPD employees that referred to his mental condition. The district court concluded that the alleged comments were inextricably linked to Krocka's disability discrimination claim because they were only offensive to the extent that they referred to Krocka's disability. We agree with the district court's conclusion and affirm its decision to dismiss Krocka's state law IIED claim.

**D. ATTORNEY'S FEES**

Krocka's final contention is that the district court erred in denying his request for attorney's fees. We review the district court's decision in this matter for abuse of discretion. *Miller v. Artistic Cleaners*, 153 F.3d 781, 784 (7th Cir.1998).

A plaintiff who is a "prevailing party" on an ADA claim may be awarded attorney's fees. 42 U.S.C. §§ 2000e–5(k), 12117(a). A party prevails in litigation "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *see Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."); *Hewitt v. Helms*, 482 U.S. 755, 760–61, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987).

Traditionally, this Circuit has applied the catalyst or equivalency rule whereby attorney's fees may be awarded in certain cases where the plaintiff received the relief he was seeking through the voluntary action of the defendant. *See Johnson v. Lafayette Fire Fighters Ass'n*, 51 F.3d 726, 730 (7th Cir.1995); *Stewart v. McGinnis*, 5 F.3d 1031, 1039 (7th Cir.1993); *see also Hewitt*, 482 U.S. at 761, 107 S.Ct. 2672. In *Zinn v. Shalala*, we considered the issue of whether *Farrar* abrogated the "catalyst rule" and concluded that it did not. 35 F.3d 273, 276 (7th Cir.1994). We held that where the defendant voluntarily granted the plaintiffs' desired relief and the pending case was dismissed as moot, the plaintiffs may have been entitled to attorney's fees if 1) the plaintiffs' lawsuit was "causally linked to the achievement of the relief obtained," and 2) the defendant did not act "wholly gratuitously, i.e. the plaintiffs' claim, if pressed, [was not] frivolous, unreasonable, or groundless." *Id.* (internal quotations omitted).

In this case, Krocka argues that because CPD removed him from the PCP pending the outcome of this litigation and has not placed him back in that program, he was a prevailing party under the catalyst theory because he received the relief he sought through his ADA litigation. He argues that he satisfies the *Zinn* test because the district court's ruling on summary judgment that placing him in the PCP was an adverse employment action was the cause of CPD's decision to remove him from that program and that his suit was not "frivolous, unreasonable, or groundless" because he presented sufficient evidence to survive summary judgment. However, we have held that a plaintiff who ultimately loses because a final judgment is entered against him is not transformed into a prevailing party simply because an interim judgment may have been entered in his favor. *See Hunger v. Leininger*, 15 F.3d 664, 670 (7th Cir.1994). In *Hunger*, we stated:

[i]n the course of a proceeding that may result in the utter defeat of the plaintiff, he may nevertheless obtain some favorable rulings ...that confer a benefit upon him until the rulings are ultimately vacated: tactical victories in what turns out to be a losing war. Such rulings do not create a right to attorney's fees.

*Id.* The district court's grant of partial summary judgment to Krocka was at most an interim victory that cannot serve as the basis for declaring Krocka to be the prevailing party in a war that he ultimately lost.

▮ Furthermore, because this case was litigated to final judgment and Krocka lost, CPD may return Krocka to the PCP at any time without fear of incurring liability under the ADA. The plaintiffs' suit in *Zinn* was only dismissed because the pending case was rendered moot when the plaintiffs received the relief they sought. If the defendant in *Zinn* were to change its mind and take that relief away from the plaintiffs, the plaintiffs could have reinstated their suit. Thus, although no material alteration in the legal status of the parties had yet occurred, one was still possible. In this case, the legal status of the parties was fixed through a final judgment entered by the court. We do not interpret the attorney's fees statute as intending to discourage employers from voluntarily granting plaintiffs relief out of a sense of moral, although not legal, obligation. Where a plaintiff has "obtained benefits to which we now know he was never entitled," the granting of that relief does not provide grounds for awarding attorney's fees. *Hunger*, 15 F.3d at 670. Krocka did not prevail at trial, and CPD's decision to gratuitously grant him the relief he requested does not change that fact. *See Palmer v. City of Chicago*, 806 F.2d 1316, 1322 (7th Cir.1986) (asserting that the defendant's decision to voluntarily alter its actions to the benefit of the plaintiff, either voluntarily pending the outcome of a trial or permanently in spite of winning at trial, does not transform the plaintiff into a "prevailing party" who is entitled to attorney's fees). The district court did not abuse its discretion when it denied Krocka's request for attorney's fees.

## E. COSTS

The Defendants cross-appeal claiming that the district court erred in denying their request for an award of costs. Defendants claim that because they are the prevailing party in this suit, they are entitled to receive costs. Krocka responds that even though the Defendants won on the ADA and IIED claims, he won on the Fourth Amendment claim. Therefore, he argues that both parties prevailed in the overall litigation and that the district court did not err in ordering that each side should bear its own costs.

▮ The Federal Rules of Civil Procedure create a presumption that the prevailing party will recover its costs. *See* Fed. R. Civ. Pro. 54(d)(1); *Finchum v. Ford Motor Co.*, 57 F.3d 526, 533 (7th Cir.1995). Ordinarily a denial of costs to a prevailing party must be accompanied by an explanation of the district court's "good reasons" for this denial. *See Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir.1997); *Congregation of the Passion v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir.1988).

▮ In this case, the district court did not make a record of its reasons for denying the Defendants' request for costs. Krocka is correct in stating that both sides technically prevailed in this matter. However, the Defendants are also correct that their win may be perceived as more substantial than that of the plaintiff. We do not disapprove of the district court's decision to require each side to bear its own costs, nor do we preclude a reconsideration of that decision. We simply require that the district court's decision regarding the costs in this matter be accompanied by an explanation of the sound legal reasons supporting that decision. Thus, we remand to

the district court for an explanation of its decision regarding the allocation of costs.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of summary judgment to the Defendants on the issue of whether CPD regarded Krocka as disabled. We also AFFIRM the district court's denial of Krocka's request for a new trial, the district court's dismissal of Krocka's state law IIED claim, and the district court's denial of Krocka's request for attorney's fees. We REMAND this case to the district court solely for an explanation of its decision allocating costs consistent with this opinion.