**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 10, 2010[*]
Decided February 22, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 08-3900

| | |
|---|---|
| MARIA J. PORCH, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 06 C 6322 |
| JOHN E. POTTER, | |
| Postmaster General of the | David H. Coar, |
| United States Postal Service, | *Judge.* |
| *Defendant-Appellee.* | |

**O R D E R**

Maria Porch worked for the United States Postal Service for over 20 years before she was suspended in 2005. In this lawsuit under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796*l*, Porch claims that the Postal Service disciplined her because of a disability and to retaliate for complaining about discrimination in the workplace. The district court granted summary judgment for the Postal Service. We affirm that decision.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

The following account, except where noted, was undisputed for purposes of summary judgment. Porch suffers from depression, a condition that kept her away from work between 1998 and 2001. She also has been injured on the job, twice by her count. The Postal Service acknowledges that Porch was injured in 2002 when a container holding mail fell on her. When Porch returned to work, the Postal Service accommodated her residual shoulder and arm pain by reassigning her from a position sorting mail to a light-duty job that allowed her to sit at a table repairing torn items of mail at her own pace. Porch was still doing this job on January 27, 2005, when she reportedly suffered another injury at work.

On that day Porch told her supervisor that the plastic cover on a toilet-paper dispenser in a post office restroom had popped open and struck her in the head and shoulder when she tried to pull tissues from the roll. The supervisor quickly inspected the dispenser and found it to be intact. She also summoned an in-house doctor, who noted that Porch was complaining of a headache and numbness in her ear but showed no visible signs of bumps, bruises, or swelling. The doctor concluded that Porch's headache was not related to the alleged incident.

Porch, though, did not go to work for more than two weeks. She made multiple visits to her personal physician, Dr. Jacob Salomon, and complained of severe headaches and arm pain that she attributed to the dispenser incident. Dr. Salomon gave her several notes excusing her from work. In one note he opined that Porch was "totally incapacitated" and unable to work from January 29 to February 15. That note prompted management to require that Porch again see the in-house doctor. Porch told the doctor that her head and arm pain had improved with the use of over-the-counter pain relievers. Still, she said, she was suffering from headaches and depression that rendered her unable to work. The anxiety was so great, she added, that she was unable to drive and was spending her days resting at home.

Meanwhile, Porch had filed with the Department of Labor a claim for workers' compensation, which she supported with more notes from Dr. Salomon saying she was "totally incapacitated" and unable to work because of the dispenser incident. Porch's claim was approved and she remained on paid leave until February 16, when officially she returned to her job. During the next two weeks, however, Porch worked only three full days. Every other day she either reported to work late, left early for appointments, or took leave authorized by her claim for workers' compensation. Each time she would produce more notes from Dr. Salomon explaining that her absences or late arrivals were attributed to the dispenser incident. The doctor said nothing about depression.

What Porch did not know was that postal inspectors had her under surveillance while she was on paid leave and receiving workers' compensation. During this time Porch was seen driving, shopping, spending hours at a beauty salon, and carrying bags of groceries and trays of drinks with her injured arm. In early March an inspector questioned Porch about these activities. Porch said she remembered having severe headaches each day but otherwise could not recall what she had done while on leave. When shown videos of herself, however, Porch changed direction and explained that she was able to engage in normal activities away from the post office because it was stress from that job which triggered her disabling anxiety and depression. When asked if she had continued attending college courses at night while on leave, Porch said she had not gone since the dispenser incident, but attendance records later obtained by subpoena showed that Porch had indeed attended several classes during this time.

Based on the findings in the postal inspectors' report, Porch was placed on emergency suspension for submitting a fraudulent claim for workers' compensation. The report concluded that, while on leave, Porch was performing "activities inconsistent with her claimed medical restrictions." Several weeks later Porch was notified that she was being discharged as of May 14, 2005, for her fraudulent behavior. The Postal Service had concluded from its surveillance that Porch had not been "totally incapacitated" from the dispenser incident and instead could have performed her light-duty job.

In response Porch first filed a union grievance challenging her suspension and termination. The Postal Service settled part of the grievance by rescinding the emergency suspension and paying Porch through May 14. The Postal Service also unilaterally reduced her termination to a long-term suspension, lasting from May 14, 2005 through February 12, 2006. Nonetheless, Porch pressed her claim and a year later an arbitrator found that the Postal Service had just cause for disciplining Porch for submitting a fraudulent claim. But the arbitrator's decision did not entirely resolve the matter because, in the interim, Porch had filed an internal administrative complaint alleging, as relevant here, that her suspension was because of a disability—depression—and in retaliation for prior complaints about discrimination.

When her administrative claim did not succeed, Porch filed this action making the same allegations and seeking upwards of $10 million. In granting summary judgment on the claim of disability discrimination, the district court reasoned that Porch's depression was not disabling within the meaning of the Rehabilitation Act because there was no evidence that Porch's condition had substantially limited any major life activity. As for Porch's retaliation claim, the court concluded that Porch lacked evidence from which a jury reasonably could find a causal connection between her termination and her unspecified

prior complaints about discrimination. The court also recognized that Porch had not disputed the Postal Service's explanation that she was disciplined because of her fraud.

We review a grant of summary judgment de novo. *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009). To defeat a motion for summary judgment, the opponent must introduce evidence demonstrating a genuine issue for trial. *Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 675 (7th Cir. 2006). In reviewing the record we draw all reasonable inferences in favor of the nonmoving party. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

We note at the outset that the undisputed evidence shows that Porch was disciplined for committing fraud, not because of her alleged disability or any perception that she was disabled. The evidence of her fraud is alone enough for us to affirm the district court's grant of summary judgment to the Postal Service on both the discrimination and retaliation claims because it demonstrates that the Postal Service had a legitimate, non-discriminatory reason for disciplining Porch, and Porch has no direct evidence of an unlawful motive or evidence that the Postal Service's stated reason was a pretext to mask an unlawful motive. In fact, in light of the undisputed evidence showing Porch's fraud, any suggestion of a pretext would be highly ironic. We also reach the same result through analysis of the elements necessary to establish claims of discrimination and retaliation under the Rehabilitation Act.

To establish disability discrimination, a plaintiff must establish that she (1) is disabled under the statutory definition, (2) is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) suffered an adverse employment action because of her disability. *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008); *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). Only the first element was disputed by the Postal Service. Porch argued, and repeats here, that her depression is a qualifying disability because, she asserts, her job at the post office exacerbates her depression and in turn prevents her from carrying out her job duties.

Having an impairment is not enough. Depression, depending on its severity, may or may not constitute a disability. *Cassimy v. Board of Education of Rockford Public Schools*, 461 F.3d 932, 936 (7th Cir. 2006). For Porch's depression to meet the statutory definition of a qualifying disability, the condition must substantially limit at least one major life activity, *id*. at 936; *Scheerer v. Potter*, 443 F.3d 916, 918-19 (7th Cir. 2006), or at least be perceived by the employer as substantially limiting a major life activity, see *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 282-83 (1987); *Garg*, 521 F.3d at 736. Porch has never contended that the Postal Service *perceived* her as being disabled; quite the contrary. Thus the relevant inquiry

is whether a jury reasonably could conclude from this record that Porch's depression limits a major life activity.

Major life activities are those of "central importance to daily life," *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002), and include walking, eating, sleeping, learning, and working, 28 C.F.R. § 41.31(b)(2); 45 C.F.R. § 84.3(j)(2)(ii); *Bragdon v. Abbott*, 524 U.S. 624, 63-39 (1998); *Hancock v. Potter*, 531 F.3d 474, 479 (7th Cir. 2008). The focus here is on the activity of working.

A person is substantially limited in an activity if she cannot perform it or, in comparison to an average person in the general population, is "significantly restricted as to the condition, manner or duration" under which she can perform that activity. 29 C.F.R. § 1630.2(j)(1); *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 781 (7th Cir. 2008). When working is the major life activity at issue, it is not enough for a plaintiff to show that her impairment keeps her from doing her present job; an impairment does not substantially limit the major life activity of working unless the condition prevents the plaintiff from performing "a broad range of jobs." 29 C.F.R. § 1630.2(j)(3)(i); see *Toyota Motor Mfg.*, 534 U.S. at 200; *Squibb*, 497 F.3d at 781-82; *Cassimy*, 461 F.3d at 936; *Peters v. City of Mauston*, 311 F.3d 835, 843 (7th Cir. 2002).

And that is where Porch's claim ends. Her contention is that just going to the post office triggered anxiety and stress that depressed her to the point that she could not do her job. For proof, she points only to a statement from Dr. Salomon, who described Porch as "totally incapacitated." But the doctor defined "total incapacity" to mean "the inability of rendering any useful service for the United States Postal Service," and of course that is not the standard. Even if Dr. Salomon was correct in saying that Porch could not continue repairing torn mail at a post office, Porch's evidence still does nothing more than demonstrate an inability to perform one particular job. That is not enough to render her substantially limited in the major life activity of working. See *Squibb*, 497 F.3d at 782; *Cassimy*, 461 F.3d at 936-37; *Peters*, 311 F.3d at 843. We agree with the district court that the Postal Service was entitled to summary judgment on Porch's discrimination claim.

As for the retaliation claim, see 29 U.S.C. § 794(d); 42 U.S.C. § 12203, Porch argues that the district court erred in concluding that her evidence, which was limited to the inference arising from the timing of the disciplinary action relative to her internal complaints about discrimination, was insufficient for a jury to find retaliation. On this claim Porch would have to establish that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two events. *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). Porch's suspension and her administrative complaints to the Equal Employment Opportunity office

within the Postal Service satisfy the first two elements, so the central question is whether she offered enough evidence to allow a reasonable jury to find the necessary causal connection.

The Postal Service offered undisputed evidence that Porch filed a fraudulent claim for workers' compensation. The Postal Service also introduced evidence that Porch's fraud motivated its decision to discipline her. In fact, in her response to the motion for summary judgment, Porch conceded that the manager who made the initial decision to fire her acted on the basis of "what he believed to have been workers' compensation fraud," so it is difficult to see how Porch could have a claim for retaliation on this record. She had no direct evidence of a causal link between the adverse employment action and her protected activity, so she was left to rely on timing alone. Porch points out that she filed two administrative complaints in 2005 and was initially discharged in May of that year. Yet the second of those complaints was submitted six days after Porch's termination date, and so it could not have been a motivation for the discipline. The other administrative complaint had been filed in January, and it did allege disability discrimination. But temporal proximity between protected activity and an adverse action rarely will suffice alone to create a triable issue, *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 859 (7th Cir. 2008); *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002), and certainly not here, where we have undisputed evidence that Porch was disciplined for fraud. Since Porch presented no other evidence of a retaliatory motive to shore up this weak inference of suspicious timing, summary judgment was also proper on this claim.

The judgment of the district court is AFFIRMED.