NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 27, 2012[*]
Decided July 2, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-1382

| | |
|---|---|
| GLENN J. HOPKINS, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 11-cv-3347 |
| SPRINGFIELD HOUSING AUTHORITY, *Defendant-Appellee.* | Richard Mills, *Judge*. |

**O R D E R**

Glenn Hopkins appeals the district court's denial of a preliminary injunction to prevent the Springfield Housing Authority from reducing his housing subsidy or inspecting his home pending the outcome of his lawsuit charging the agency with disability discrimination and retaliation. The district court concluded that a preliminary injunction was unwarranted because Hopkins had not identified a connection between SHA's actions

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

and his disability and so he was not reasonably likely to succeed on the merits of his claims. We affirm.

Since 2006 Hopkins has received a Section 8 voucher administered by SHA to subsidize his housing costs. In his required annual recertification application, Hopkins reported in 2010 that he lived with his wife Cindy, his daughter-in-law Shannon, and Shannon's two children; he also stated that his Social Security was their only income. In 2011 SHA learned that Shannon had earned income in 2010 which he did not report in his recertification application. To account for this unreported income, the SHA reduced Hopkins' subsidy.

Hopkins then sent letters to U.S. Senator Richard Durbin and Shaun Donovan, Secretary of Housing and Urban Development, stating that SHA had discriminated against him. In the letter to Senator Durbin, Hopkins claimed that he had been subjected to disability discrimination, though he did not identify his disability. The letter to Secretary Donovan stated only that he had been "the victim of discrimination."

In July Hopkins asked SHA not to count Shannon's income against his subsidy because she had moved out of his three-bedroom apartment after his wife's death in February 2010. SHA removed Shannon from Hopkins' voucher and the subtraction of her income led to him qualifying for a larger subsidy. But less than a month later, SHA processed Hopkins' recertification for 2011 and again lowered his subsidy because, as the lone person on the voucher, he qualified for a subsidy for only a one-bedroom apartment.

Meanwhile, in June, Hopkins' apartment had failed the SHA's annual inspection. The apartment contained excessive debris and needed cleaning, and the backyard needed to be mowed. Several follow-up inspections were scheduled to ensure that Hopkins had resolved these problems, but Hopkins either was not present or denied the inspector entry.

About this same time, Hopkins sued SHA for retaliation in violation of the Americans with Disability Act, 42 U.S.C. § 12203(a), claiming that the agency reduced his subsidy and authorized an inspection of his apartment in response to the complaints he made to Senator Durbin and Secretary Donovan. The inspection and housing subsidy also formed the basis for a related claim that SHA discriminated against him and failed to accommodate his disability (which remained unidentified), as required by the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B). He also brought unspecified claims under 42 U.S.C. § 1983. At the same time, Hopkins moved for a preliminary injunction to prevent SHA from reducing his housing subsidy, inspecting his apartment, and engaging in any other "acts of reprisal" pending the outcome of his discrimination suit. Hopkins then asked Judge Mills to recuse

himself based on unfavorable rulings the judge had made against him in previous cases, but the judge denied the motion.

The court denied the injunction because Hopkins was not reasonably likely to succeed on the merits of his claims. Even if Hopkins could make out a prima facie case of retaliation, the court noted, SHA would be able to show legitimate nondiscriminatory reasons for its actions; it was required to inspect subsidized housing, and the reduction in Hopkins' subsidy stemmed from changes in income and family composition. Further, the court stated, inspections and subsidy reductions do not affect people with disabilities more than other residents of subsidized housing, and thus Hopkins was unlikely to succeed on his claims under the FHA for failure to accommodate and disparate impact. Finally the court construed Hopkins' § 1983 claim as based on violations of the ADA and concluded that the Act's comprehensive remedial scheme precluded him from bringing these claims under § 1983.

On appeal Hopkins first challenges the denial of the preliminary injunction on the grounds that he made out a prima facie case of retaliation under the ADA, 42 U.S.C. § 12203, and thus showed a likelihood of success on the merits of his claim. But Hopkins misapprehends the basis of the court's decision. According to the court, even if Hopkins were able to establish a prima facie case of retaliation, SHA could rebut any inference of a connection between its actions and Hopkins' complaints, *see Bodenstab v. Cnty. of Cook*, 569 F.3d 651, 660–61 (7th Cir. 2009); *Cassimy v. Bd. of Educ. of the Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 938–39 (7th Cir. 2006), by showing that the inspections were required, 42 U.S.C. § 1437f(o)(8)(D), and that the changes in his subsidy reflected changes in his family income and composition. The district court did not abuse its discretion in concluding that Hopkins could not show a likelihood of success on the merits of his retaliation claim.

Hopkins next argues that the preliminary injunction should have been granted because he could show he was likely to succeed on the merits of his FHA claims (1) that SHA failed to accommodate his disability and (2) that inspections and subsidy reductions have a disparate impact on people with disabilities. But as the district court noted, under the FHA both an accommodation claim and a disparate-impact claim required Hopkins to identify a disability and explain how SHA's actions affected him more than other residents because of that disability. *See Wis. Cmty. Servs. Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006); *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012). Hopkins has yet to identify his disability or explain how SHA's actions have a greater impact on people with disabilities. The district court thus did not abuse its discretion in concluding that his FHA claims are unlikely to succeed on the merits.

Hopkins further maintains that the district court misconstrued his § 1983 claim as based on violations of the ADA rather than a conspiracy to commit unspecified violations of the Fourth and Eighth Amendments. But Hopkins did not explain—either in the district court or on appeal—how the SHA violated these amendments.

Finally, Hopkins argues that Judge Mills was biased and should have recused himself from the case. But an order concluding that recusal is not warranted under 28 U.S.C. § 455(a) is not an interlocutory order appealable as of right under 28 U.S.C. § 1292(a). *Alexander v. Chicago Park Dist.*, 709 F.2d 463, 470–71 (7th Cir. 1983); *see also United States v. Diekemper*, 604 F.3d 345, 351 (7th Cir. 2010).

AFFIRMED.