In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2389

MARY R. SQUIBB,

*Plaintiff-Appellant*,

*v.*

MEMORIAL MEDICAL CENTER,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 C 3097—**Jeanne E. Scott**, *Judge.*

———————

ARGUED MAY 21, 2007—DECIDED AUGUST 16, 2007

———————

Before RIPPLE, WOOD and EVANS, *Circuit Judges.*

RIPPLE, *Circuit Judge.*  Mary Rios Squibb brought this
action against her former employer, Memorial Medical
Center ("Memorial"), claiming violations of the Americans
with Disabilities Act ("ADA" or "Act") and the Illinois
Workers Compensation Act ("IWCA"). The district court
granted summary judgment in favor of Memorial on the
ADA claims and declined to exercise supplemental juris-
diction over the IWCA state law claims. Ms. Squibb now
appeals the grant of summary judgment on the ADA
claims. For the reasons set forth in this opinion, we affirm
the judgment of the district court.

# I

# BACKGROUND

## A. Facts

Ms. Squibb began working for Memorial in 1990 as a certified nurse assistant and remained there after obtaining her license as a registered nurse. Between 1993 and 2000, Ms. Squibb sustained three back injuries in the course of her duties. Each injury occurred when she had attempted to lift or move a patient. While recovering from her first injury, Ms. Squibb had certain temporary lifting restrictions and an attendant corrective surgery. Eventually, she was released to work without restrictions.

After the third back injury in 2000, she again required surgery and a significant recovery period. Prior to the surgery, her physician, Dr. Stephen Pineda, placed her on several restrictions. She was not to lift in excess of 5 pounds, push or pull, sit or stand for extended periods, or bend or stoop. In April 2001, following a surgery in December 2000, she was returned to "light-duty" work. She could lift no more than 10 pounds and could work for only four hours each day. Ms. Squibb stated in her deposition that she sometimes was required to push a wheelchair while on "light-duty," but that she generally did not return to patient care duties and received help with patient lifting whenever necessary. During this period she received an additional temporary assignment within her restrictions.

Ms. Squibb gradually was advanced to working five days per week and was permitted by her physician to return to patient care. However, the ten-pound lifting restriction initially remained in place, and, accordingly, she remained in temporary, clerical, non-nursing positions until August 2002. Unhappy with her inability to work in a patient care

nursing capacity, Ms. Squibb requested a further release. Dr. Pineda loosened her lifting restriction to allow lifts of up to fifty pounds, but informed her that she likely had reached maximum post-surgical improvement. Her restriction would be permanent.

With this additional release on the lifting restrictions, Ms. Squibb was transferred to a temporary light-duty RN position. By December 2002, however, the restriction was confirmed to be permanent, and Memorial was notified. Memorial, in turn, communicated to Ms. Squibb that she would have to look for a *permanent* position that would accommodate her permanent restrictions because she would no longer be held in temporary assignments. Ms. Squibb characterizes this communication as a termination; Memorial claims she was placed on leave. At the end of January 2003, Ms. Squibb filed an EEOC charge in which she claimed that she was terminated because of her disability in violation of the ADA.

In January 2003, Ms. Squibb underwent a functional capacity evaluation ("FCE") required by Memorial to assess her physical abilities before another appropriate position could be found for her. The results of the FCE revealed that Ms. Squibb could kneel, crouch, stand or sit "continuously," that she could twist "frequently" and that she could bend "occasionally." R.40-15 at C. Her lifting maximum in the test was roughly 25-30 pounds, but she could do this only "rarely." *Id.* In continuous lifting or carrying, she was limited to roughly 5-10 pounds. She could push and pull upwards of fifty pounds rarely, but, again, the FCE revealed that, on a continuous basis, she would be limited to significantly lighter loads of about 15 pounds. The written text accompanying the FCE stated that Ms. Squibb was in a "[d]econditioned state which limited

[her] material handling and climbing abilities." *Id.* at B. It otherwise reported that she was "currently functioning at a light physical demands level, well under the 50# permanent restriction placed on her by her physician." *Id.*

Following this test, which concluded that her "abilities do not match the physical demands of a registered nurse at Memorial," *id.*, Ms. Squibb began working as a patient placement coordinator, a position which she was told would fit her physical limitations. In the approximately three months that she held the position, between February and May 2003, she claims that she twice was asked to perform duties outside her physician-imposed restrictions. She missed several days of work for health-related reasons during this period and she provided physicians' notes for these absences. She received lukewarm performance ratings in this position, and, apparently in response to her absences, Memorial placed her on administrative leave lasting until April 2004.

Ms. Squibb brought the present action at the end of April 2004, but her employment odyssey with Memorial continued. In June 2004, Ms. Squibb provided another letter from Dr. Pineda that stated that she could return to light duty with exact limits to be determined by another FCE. Memorial responded by asking whether the lifting restrictions remained in place; at Ms. Squibb's request, no additional medical information was provided.

She applied for additional positions in the field of local medical review policy, for which she believes she was qualified, and for one additional position recommended by Memorial's human resources personnel as a clinical case manager. Memorial eventually filled one of the local medical review policy positions with an employee it contends had more relevant experience; it eliminated the

additional position without filling it. Memorial offered Ms. Squibb the clinical case manager position, but she declined because she believed the job requirements to be outside her physical restrictions. In January 2005, Memorial terminated Ms. Squibb for failure to return from leave when offered the clinical case manager position.

## B. District Court Proceedings

Ms. Squibb's ten-count complaint against Memorial alleged that Memorial had violated the ADA at various times during her employment relationship. The bases for her claims were essentially that Memorial: (1) failed to reasonably accommodate her disability; (2) wrongfully terminated her in December 2002 because of her disability or perceived disability, and terminated her again in January 2005 because she refused a position that she was physically unable to perform because of her disability; (3) refused to hire her for either of the two local medical review policy positions because of her disability; (4) refused to hire her for the local medical review policy positions in retaliation for her January 2003 EEOC charge and for filing the instant lawsuit in April 2004; and (5) terminated her in January 2005, also in retaliation for her charge and her lawsuit. She also alleged that she was wrongfully discharged in violation of the IWCA in December 2002 and January 2005.

Memorial moved for summary judgment on all claims. The district court granted that motion on the ADA claims and declined to exercise supplemental jurisdiction over the IWCA claims. The court ruled that: (1) Ms. Squibb was not disabled; (2) Ms. Squibb was not a qualified individual with a disability because no reasonable accommodation

would allow her to perform the essential functions of the patient care RN positions she sought; and (3) Ms. Squibb had not produced direct evidence of discrimination in support of her retaliation charge nor had she met the requirements of a prima facie case under the indirect method. Ms. Squibb timely appeals the entry of judgment against her.

## II

## DISCUSSION

We review the district court's grant of summary judgment de novo, construing all facts and inferences in the light most favorable to the nonmoving party, here, Ms. Squibb. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met this burden, in order to survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial. *Celotex Corp.*, 477 U.S. at 322-23. The nonmoving party cannot succeed by resting on its pleadings; it must provide evidence on which a jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## A.

Ms. Squibb claims that Memorial violated the ADA by failing to reasonably accommodate her disability, failing to

hire her because of her disability or perceived disability and terminating her because of her disability or perceived disability. The ADA's prohibition on employment discrimination provides,

> No covered entity shall discriminate against a *qualified individual with a disability* because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis added). "A plaintiff seeking to avoid summary judgment must demonstrate that there is at least a genuine issue of material fact as to whether he is disabled, whether he can perform the essential functions of the position, and whether he has suffered an adverse employment action because of his disability." *Kupstas v. City of Greenwood*, 398 F.3d 609, 611 (7th Cir. 2005).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Ms. Squibb claims that she has a "disability," either under subsection (A), because she has an impairment that substantially limits major life activities, or under subsection (C), because Memorial regarded her as having such an impairment. The district court determined that there were no material facts in dispute, and Ms. Squibb was not disabled as a matter of law.

Viewing the evidence in the light most favorable to Ms. Squibb, her physician-imposed restrictions and Memorial's own 2003 FCE demonstrate that her back injuries limit her

movement and her physical strength in a number of ways. She cannot lift objects over 25-30 pounds; she cannot bend or twist continuously; she struggles, in varying degrees, with pulling, pushing and climbing.[1]

To determine whether her back condition, with its attendant physical consequences renders Ms. Squibb "disabled" for purposes of the statute, we ask whether it "substantially limits" her in any major life activity. The regulations provide that an individual is substantially limited in such activities if she is unable to perform such an activity or is "[s]ignificantly restricted as to the condition, manner or duration under which" she can perform it, as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1).[2] Whether a particular impairment substantially limits a major life activity is a case-specific, individualized inquiry. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007). Ms. Squibb claims to be limited in her ability to work, sleep, care for herself, walk,

---

[1] Memorial does not contend that Ms. Squibb's back condition is not an "impairment" within the meaning of the statute and the regulations, and we therefore take this as established for present purposes.

[2] The Supreme Court has noted that it is unclear what weight should be given to the regulations and guidance issued by the EEOC, because the agency has not been given authority to interpret the term "disability" as contained in the ADA. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 194 (2002); *see* 29 C.F.R. § 1630.2(g)-(l). This court continues to use the guidance provided by the regulations, while acknowledging that they cannot "obscure the ADA's 'demanding standard for qualifying as disabled.'" *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 800-01 (7th Cir. 2005) (quoting *Toyota Motor Mfg.*, 534 U.S. at 197).

sit and engage in sexual intercourse, all of which she identifies as major life activities.[3] We consider each in turn.

**1.**

Ms. Squibb claims that, because of her back injury, she is substantially limited in the major life activity of working. This court previously has held that working is a major life activity and the parties have not asked the court to reconsider that conclusion.[4] *See Kupstas*, 398 F.3d at 612; 29 C.F.R. § 1630.2(i), (j)(3). In order to be substantially limited in the major life activity of working, the regulations require that the individual be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). A demonstrated "inability to perform a single, particular job" does not render an individual substantially limited in the major life activity of working. *Id.*

We previously have expressed doubt that an inability to lift more than ten pounds, which in turn restricts an

[3] The regulations define "major life activities" to include: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

[4] The Supreme Court has not decided whether working should be classified as a major life activity, but it has acknowledged the "conceptual difficulty" and circularity that this classification might entail. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999); *see also Toyota Motor Mfg.*, 534 U.S. at 200; *EEOC v. Schneider Nat'l, Inc.*, 481 F.3d 507, 511 (7th Cir. 2007).

individual's employment opportunities in heavy-duty jobs, could constitute a disability within the meaning of the statute. *See Mays v. Principi*, 301 F.3d 866, 869-70 (7th Cir. 2002) (noting that, although not raised by the parties, the court did not wish to endorse by its silence the view that a nurse whose back injuries restricted her lifting to a maximum of ten pounds was disabled within the meaning of federal disability law); *see also id.* at 869 ("The physician who determined the severity and duration of her back injury thought she could return to her job as a light-duty nurse. The number of Americans restricted by back problems to light work is legion. They are not disabled."); *Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001) (holding that an individual who was "unable to lift in excess of 45 pounds for a long period of time, unable to engage in strenuous work, and unable to drive a forklift for more than four hours a day" was not substantially limited in the major life activity of working).

These decisions find support in the direction provided by the Supreme Court when a plaintiff's claimed disability limits her employment opportunities:

> To be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. *If jobs utilizing an individual's skills* (but perhaps not his or her unique talents) *are available, one is not precluded from a substantial class of jobs.* Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999) (emphasis added).

As both the EEOC regulations and *Sutton* explicitly state, Ms. Squibb's inability to work any longer in her nursing job

of choice, patient care nursing in a general services hospital, does not demonstrate that she is substantially limited in the major life activity of working.

In an attempt to fit within the Supreme Court's description, Ms. Squibb contends that her limitation precludes her from performing all nursing positions involving patient care. She claims that this preclusion demonstrates that she is significantly restricted in performing a "class of jobs." However, as we have stated, a " 'class of jobs' is the job from which a claimant was disqualified, as well as all other jobs utilizing similar training, knowledge, and skills within 'the geographical area to which the [claimant] has reasonable access.' " *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001) (quoting 29 C.F.R. § 1630.2(j)(3)(i)) (modification in original). Ms. Squibb is a professional woman holding a license in nursing; we therefore must consider her working limitations in the context of other persons possessing similar training, skills and abilities and the manner of jobs open to them. *See* 29 C.F.R. § 1630.2(j)(3)(i). In support of her claim, she notes that Memorial's website only advertises patient care nursing positions and that Memorial is the largest nursing employer in the area. Despite this submission, she nevertheless further submits evidence that Memorial itself has available *nursing* positions, including *patient care nursing* positions, for which all of the duties fall within her physical abilities. *See* Appellant's Br. at 40-41.[5] On the basis of this

---

[5] In support of her claims that Memorial failed to reasonably accommodate her "disability," Ms. Squibb states that she was qualified for RN positions at certain of Memorial's affiliated clinics (HCNAs), "where lifting was not an essential function of

(continued...)

record, therefore, Ms. Squibb certainly has not raised a triable issue of fact as to whether her back condition substantially limits her ability to work. Ms. Squibb's evidence on this point does not cross the minimum threshold for demonstrating that she cannot perform a "class of jobs": Not only has she failed to produce evidence of the range of non-patient care nursing positions that persons with her training could perform, within her restrictions, her evidence demonstrates that she may perform certain positions in *the particular job* of patient care nursing she seeks. A person cannot demonstrate that she is significantly limited in performing a "class of jobs" when her own evidence demonstrates that there are jobs within the broad parameters of her professional calling that she can perform without restriction. *Accord Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir. 2001) (stating that a nurse with a 40 pound lifting restriction "was only precluded from performing a narrow range" of jobs by her limitations and, therefore, was not substantially limited in the major life activity of working).

Ms. Squibb further maintains that, because of her condition, she is unable to perform all medium- and heavy-duty

---

[5] (...continued)
an RN position." Appellant's Br. at 40. She further states that she "was capable of performing the job duties of *various nursing jobs* at Memorial such as (1) Outcomes Case Manager; (2) Local Medical Review Policy Coordinator; (3) RN Continued Stay Specialist; (4) Pre-Admission Planning Nurse; (5) Employee Health Service Coordinator; and (6) a Charge Resource Nurse." *Id.* at 41 (emphasis added). Her deposition testimony was that she believed that she could perform the duties of each of these nursing jobs in the Memorial system *without* any accommodation.

jobs; she claims this demonstrates that she is restricted from performing a broad range of jobs in various classes. To determine whether an individual is precluded, by reason of their impairment, from performing a "broad range of jobs in various classes," we consider "the job from which a claimant was disqualified, as well as all other jobs *not utilizing* similar training, knowledge, and skills within 'the geographical area to which the [claimant] has reasonable access.' " *Rockwell Int'l Corp.*, 243 F.3d at 1017 (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(A), (C)) (emphasis added) (modification in original). Ms. Squibb's blanket contention that she cannot perform anything other than a light-duty job does not demonstrate that she is significantly restricted in performing a broad range of jobs. She has submitted no evidence of the range of jobs available in her geographic area that would fall within her physical restrictions, even if they would not make use of her particular skills. Accordingly, this basis for her claimed limitation on the major life activity of working suffers from a failure of proof.

Because Ms. Squibb has not produced evidence sufficient to create a triable issue of fact regarding whether her back condition significantly restricted her ability to perform either a class of jobs or a broad range of jobs in various classes, she has not demonstrated that she is substantially limited in the major life activity of working.

**2.**

Ms. Squibb claims that, due to her back pain, she is unable to sleep for longer than three to four hours per night and, therefore, is substantially limited in the major life activity of sleeping. Although this court has indicated that sleeping is a major life activity, *Scheerer v. Potter*, 443 F.3d

916, 919-20 (7th Cir. 2006), we have required evidence that the limitations on sleeping claimed by the plaintiff are sufficiently "prolonged, severe and long-term" to warrant classification as a disability, *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 757 (7th Cir. 2006). We have considered the extent to which a claimed lack of sleep contributes to a decreased functional level in determining whether the severity of the sleep deprivation at issue rose to the level of a disability. *See id.* Ms. Squibb's generalized assertions that she is unable to sleep for substantial periods of time, unsupported by any additional evidence, medical or otherwise, and unenhanced by claims that this lack of sleep affects her daytime functions, are insufficient to create a genuine issue of fact on her claim that she is disabled because of the limitations on her ability to sleep.[6]

---

[6]  *See Nuzum v. Ozark Auto. Distribs., Inc.*, 432 F.3d 839, 848 (8th Cir. 2005) (holding that an employee who could sleep for no more than two and a half hours at a time, for a total of five hours per night, was not disabled); *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316-17 (6th Cir. 2001) (holding that inability to sleep more than four to five hours per night did not demonstrate a substantial limitation in the major life activity of sleeping as compared to the average person's ability to sleep). *But see Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1061 (9th Cir. 2005) (holding that a plaintiff's testimony that he was limited to five or six hours of sleep with the assistance of medications that hampered his daytime functions and that, even with medications, sometimes he could not sleep at all, was sufficient to withstand summary judgment on whether he had a substantial impairment in the major life activity of sleeping).

**3.**

Ms. Squibb also claims to be substantially limited in the major life activity of caring for herself. *See* 29 C.F.R. § 1630.2(i) (identifying "caring for oneself" as an example of a major life activity). In support of her claim, Ms. Squibb relies on her own statements that she has difficulty with the specific activities of zipping or buttoning her clothing in the back, brushing the back of her hair, and that she is limited in her ability to do household tasks such as cooking, cleaning and grocery shopping, although she performs certain of these tasks on occasion. In light of the tasks she admittedly can perform (driving, bathing, brushing her teeth, dressing herself), we must conclude that, as a matter of law, the limitations she claims do not demonstrate that she is "prevent[ed] or severely restrict[ed]," *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002), from caring for herself. *See Holt v. Grand Lake Mental Health Ctr., Inc.*, 443 F.3d 762, 763 (10th Cir. 2006) (noting that an individual who "sometimes has difficulty eating and must chew her food thoroughly or it will become lodged in her throat[,]. . . . cannot cut her own fingernails or toenails[,]. . . . can dress herself, but sometimes must ask for help when buttoning her clothes" had not raised a genuine issue of fact as to whether she was substantially limited in the major life activity of caring for herself).

**4.**

Ms. Squibb next contends that she is substantially limited in the major life activities of sitting and walking. She specifically claims that she is unable to sit for more than thirty minutes at a time and that her difficulties walking were noticed and documented in an e-mail by one of her

supervisors. Other than stating that she walks with difficulty, she does not identify any specific limits—such as time or distance—on her ability to walk. The only additional evidence relating to her abilities in these functions contained in the record, the 2003 FCE, specifically finds that she can sit or stand continuously. Even taking Ms. Squibb's contentions regarding her ability to walk or sit at face value, her assertion that she needs breaks every thirty minutes does not compare to the claims this court has held should survive summary judgment. *See, e.g.*, *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005) (reversing summary judgment for employer where employee's evidence showed she could walk no more than one block). On this record, a trier of fact could not conclude rationally that Ms. Squibb is substantially limited in the major life activities of sitting and walking.

**5.**

Ms. Squibb finally contends that she is substantially limited in the major life activity of sexual relations.

The Supreme Court has ruled that sexual *reproduction* is a major life activity. *Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998). Although this court has recognized that it could be inferred from *Bragdon* that engaging in sexual relations constitutes a major life activity, it has deferred the question. *See Scheerer*, 443 F.3d at 921. We do so again here, because, even if we concluded that sexual relations is a major life activity, Ms. Squibb has not demonstrated sufficient evidence of her limitation to prevent summary judgment on this issue. *See Contreras*, 237 F.3d at 764 ("[E]ven if we assume that engaging in sexual relations is a major life activity, Contreras has not substantiated his claim of sexual

difficulties with any documentation or testimony beyond a general assertion that the frequency with which he has relations has decreased."). We previously have held that a plaintiff's own conclusory assertion of reduced ability to engage in intercourse is insufficient to create a genuine issue of triable fact. *Id.* Ms. Squibb's claim suffers the same deficiency. Although her own deposition testimony states that she has been unable to engage in sexual relations for two years due to her back pain, she has provided no other evidence of her claimed sexual limitation; neither is any difficulty easily inferred from the minimal restrictions placed on her physical activity by her physician or from the physical limitations revealed by the FCE on continuous activities in an eight hour working day.

In any event, as we have noted elsewhere, it is unclear in what manner a plaintiff's employer would *accommodate* a disability that restricted the plaintiff's ability to engage in sexual relations. *Scheerer*, 443 F.3d at 921 ("Even if he could provide such evidence, Scheerer fails to explain in what fashion the Postal Service could reasonably accommodate his diabetes in the context of symptoms of sexual dysfunction."). We agree with our colleagues in the Eighth Circuit that, to the extent an ADA discrimination claim centers on a request for a workplace accommodation, there must be some causal connection between the major life activity that is limited and the accommodation sought. *Nuzum v. Ozark Auto. Distribs., Inc.*, 432 F.3d 839, 848 (8th Cir. 2005) (rejecting the plaintiff's claim that his inability to "hug" could be the basis for an ADA claim against his employer, because "even if [the plaintiff] were held to be disabled by virtue of the hugging limitation, it would not save his claim since he seeks an accommodation from his employer, which must be related to the limitation in question.").

**6.**

In addition to her claims that she suffers from an impairment that qualifies as a disability under the statute, Ms. Squibb also claims that Memorial "*regarded*" her as substantially limited in the major life activities of walking and working.

This court recently has clarified that, in order to proceed under the "regarded as" prong of the ADA, a plaintiff must demonstrate that the employer believed that the employee (1) had an impairment (2) that substantially limited (3) one or more major life activities. *See Kampmier*, 472 F.3d at 937-38. "If the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Id.* at 938 (internal quotation marks omitted). Ms. Squibb claims that the hospital had notice of her difficulties with patient care nursing related to lifting and, therefore, moved her to an unassigned nursing position (rather than staff nursing); in addition, Memorial employees had noticed and reported her difficulties walking to a supervisor. However, Ms. Squibb's claims essentially rest on Memorial's knowledge of her *claimed* disabilities. She has not presented any evidence that suggests that Memorial's beliefs about her limitations exceeded the scope of her *actual* limitations. As we already have concluded, the impairments she claims do not, on their own accord, rise to the level of substantial limitations in the major life activities of walking or working. Therefore, Memorial's *notice* of those disabilities cannot establish that it regarded Ms. Squibb as disabled.

Because we have concluded that Ms. Squibb is not disabled within the meaning of the Act, she is not protected by its substantive anti-discrimination provisions. We need

not examine her reasonable accommodation, termination or failure to hire claims further. *See Kampmier*, 472 F.3d at 938-39.

## B.

In addition to claiming that she was the victim of disability discrimination, Ms. Squibb also claims that Memorial took a number of actions against her in retaliation for her EEOC charge. Our conclusion that Ms. Squibb is not disabled does not foreclose these latter claims. The Act prohibits an employer from retaliating against an employee who has raised an ADA claim, whether or not that employee ultimately succeeds on the merits of that claim.[7] *Cassimy v. Bd. of Educ. of Rockford Pub. Schs.*, 461 F.3d 932, 938 (7th Cir. 2006).

Ms. Squibb claims both that she has presented direct evidence of retaliation and that she has set forth a prima facie case of discrimination using the indirect method. We shall examine each contention.

## 1.

A plaintiff succeeds in establishing unlawful retaliation under the direct method by presenting evidence of: "(1) a

---

[7] The ADA anti-retaliation provision provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Burks*, 464 F.3d at 758. Ms. Squibb claims Memorial took several actions after she had engaged in the protected activity of filing an EEOC charge in January 2003. Ms. Squibb claims that she was refused the local medical review policy positions for which she had applied and ultimately was terminated in retaliation for her charge and the subsequent suit. Ms. Squibb has satisfied two prongs of the test: Refusal to hire and termination are adverse actions, and the filing of a charge is a statutorily protected activity.[8]

Ms. Squibb appears to recognize that the timing of her termination and the refusal to hire, both in January 2005, preceded eight months earlier by the filing of the present action and two years earlier by a discrimination charge, is insufficient circumstantial evidence, *standing alone*, to demonstrate a causal connection between the two. *See Burks*, 464 F.3d at 758-59 (noting that more than suspicious timing is generally required); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("The mere fact that one event preceded another does nothing to prove that the first event caused the second. Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." (internal

---

[8]   *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 575-76 (7th Cir. 2001) (examining what employment actions are sufficiently "adverse" to satisfy the statutory language in 42 U.S.C. § 12112(a)); *see also Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001) (noting that the plaintiff engaged in protected activity in filing EEOC charges and a subsequent lawsuit).

citations omitted)).[9] In an attempt to demonstrate retaliatory motive, Ms. Squibb contends that she suffered an intermediate retaliatory act: She was offered the position of patient placement coordinator, a job she contends was clearly outside her physical restrictions.[10] Ms. Squibb testified that, while in this position, she was twice ordered to perform duties outside her physical restrictions by co-workers, not supervisors, and "disciplined . . . for reasons associated with her disability." Appellant's Br. at 47. These two incidents involving co-workers do not demonstrate

[9] We note that, under narrow circumstances in which the time period between the protected activity and the adverse action is *exceedingly* short, we previously have found circumstantial evidence of retaliatory motive. *See McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796-97 (7th Cir. 1997) (finding that the immediacy of an adverse action occurring only two days after protected activity was sufficiently short to support an inference of discriminatory motive and discussing similar cases). We have noted that, "as the temporal distance between [the claimant's] protected expression and the adverse action increase[s], it is less likely that there is a causal link between the two events." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 485 (7th Cir. 1996). We need not decide the extent that the *McClendon* line of cases remains viable in light of the development of circuit law, however, because under the circumstances alleged in this case, in which months or years passed between the protected activities and the claimed adverse action, *McClendon*'s narrow exception can have no application.

[10] Ms. Squibb's brief on summary judgment and to this court could be read as suggesting that the job offer itself was an adverse action sufficient to support her claim of retaliation. We note that this contention was not a part of her amended complaint, nor was it presented in her EEOC charge. Therefore, we do not consider it on its merits.

that the job generally required more than Ms. Squibb was capable of doing; nor do they demonstrate that Memorial harbored a retaliatory motive against her when it placed her in the position. Memorial's act of disciplining Ms. Squibb for multiple absences in this position also does not provide any evidence that it harbored a retaliatory motive in response to her EEOC charge.

In short, her unsuccessful assignment to the patient placement coordinator position does not demonstrate that, when she ultimately was terminated and refused the local medical review policy positions in 2005, it was the culmination of some sort of pattern of retaliatory activity, as Ms. Squibb suggests. Ms. Squibb has failed to come forward with evidence of retaliation under the direct method of proof sufficient to withstand summary judgment.

**2.**

Ms. Squibb also contends that she has provided sufficient evidence to withstand summary judgment using the indirect method of proof of retaliation. To succeed under the indirect method of proof on a retaliation claim, a plaintiff must demonstrate: "(1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action." *Burks*, 464 F.3d at 759. As we already have noted, Ms. Squibb has provided two adverse actions—failure to hire and termination—and statutorily protected activity in the filing of her discrimination charge and this action. We therefore examine the latter two components of her prima facie case.

Ms. Squibb asserts that she was meeting Memorial's legitimate expectations. Although Ms. Squibb invites our attention to her successes as a nurse prior to the filing of her EEOC charge in 2002, we must examine her performance at the time of the challenged adverse actions. *See Timmons*, 469 F.3d at 1128 (noting that "*at the time he was placed on leave*, [the plaintiff] was failing to meet [his employer's] legitimate expectations" and, therefore, could not establish this element of his prima facie case). After the charge, Ms. Squibb missed significant amounts of work and received poor evaluations for a lack of attention to detail. By January 2005, when she was terminated, she was on extended leave and refused to accept a position Memorial had offered her. Ms. Squibb has come forward with no evidence whatsoever that she was performing as Memorial reasonably would expect her to perform during the relevant time period.

In addition, Ms. Squibb has not identified a similarly situated employee who was treated more favorably because she did not file a discrimination charge. Ms. Squibb invites the attention of the court to Ruth Ann Cope, another registered nurse with back problems who had been hired in the local medical review policy coordinator position two years earlier. At the time Cope was hired, she did not possess the experience that Memorial later told Ms. Squibb was necessary for the local medical review policy positions. Ms. Squibb does not dispute that Memorial had changed the position requirements since the time Cope was hired. She likewise does not dispute that Memorial restructured the duties of that position, rendering it essentially managerial and effectively eliminating the second coordinator position. Given these intervening changes to the position description, Ms. Squibb cannot say that she and Cope were similarly situated with respect to it.

With respect to the local medical review policy analyst positions, Memorial eventually hired two individuals with the relevant experience that Ms. Squibb lacked. Ms. Squibb is not "similarly situated" to persons better qualified for an open position than she was. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (noting that, in order to demonstrate that a comparison individual is similarly situated to a plaintiff, the plaintiff is required to produce evidence that the comparison employee is "directly comparable to her in all material respects," and further noting that "experience, education and qualifications" are particularly relevant in this inquiry).

Because Ms. Squibb can demonstrate neither that she was performing up to Memorial's legitimate expectations at the time of the adverse actions she suffered nor that any similarly situated employee who did not engage in protected activity was treated more favorably than she, she has not made out a prima facie case of retaliation under the indirect method of proof.

## Conclusion

Ms. Squibb has not presented sufficient evidence to create a genuine issue of fact as to whether she is disabled within the meaning of the Act; neither has she presented evidence that the adverse employment actions she suffered were taken by Memorial in retaliation for her statutorily protected activities. We therefore affirm the district court's entry of summary judgment in Memorial's favor.

AFFIRMED

No. 06-2389                                                    25

A true Copy:

     Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
