NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 12, 2008[*]
Decided March 14, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 07-3359

| | |
|---|---|
| BEVERLY ROBINSON, | Appeal from the United States District Court |
| *Plaintiff-Appellant*, | for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 05 C 4258 |
| MORGAN STANLEY & CO. INCORPORATED and DFS SERVICES LLC, | Wayne R. Andersen, *Judge*. |
| *Defendants-Appellees*. | |

**O R D E R**

Beverly Robinson claims that her former employer, Discover Financial Services, discriminated against her in violation of the Americans with Disabilities Act by failing to accommodate her allergy to perfumes and fragrances. *See* 42 U.S.C. § 12112(a), (b)(5)(A). The district court granted summary judgment to Discover. We affirm the judgment because Robinson does not have a disability as defined by the ADA.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. FED. R. APP. P. 34(a)(2).

We recount the evidence in the light most favorable to Robinson. *See Steen v. Myers*, 486 F.3d 1017, 1018 (7th Cir. 2007). Robinson suffers from a sensitivity to perfumes and fragrances. In the past she has experienced migraines, congestion, heart palpitations, a sore throat, and hives that she attributes to exposure. She also reports that exposure can hinder her concentration, her memory, and, sometimes, her ability to walk, see, and talk. The symptoms can last for as little as a few minutes or as much as a week, depending on the degree of exposure. While working at Discover, Robinson experienced several episodes severe enough to make her fear that she would stop breathing, but each time she was able to swallow a Benedryl to alleviate the symptoms. Robinson is healthy except for this condition. If she walks away from the irritant after exposure, she can mitigate the severity of the symptoms. By her account, however, Robinson cannot fully control her sensitivity to perfumes and fragrances unless she remains home at all times and lives "in a bubble."

Robinson's treating physician, Lisa Abrams, has never diagnosed Robinson as allergic to perfumes and fragrances. And because she is not an allergist, neither has Dr. Abrams performed any tests to verify that Robinson actually is sensitive to perfumes and fragrances. Indeed, in the last ten years, no doctor has tested Robinson for allergies to perfumes and fragrances. Dr. Abrams's knowledge of Robinson's condition is based entirely on their conversations. Dr. Abrams has treated Robinson's symptoms with antihistamines, nasal steroids, and decongestants, but never with allergy shots. According to Dr. Abrams, an allergic reaction would restrict Robinson's ability to breath through her nose but not her mouth, and typically would not increase her heart rate. And while theoretically a reaction could close her throat, "it hasn't been demonstrated." Dr. Abrams believes that an allergy could cause Robinson to suffer migraines and lose focus but would not immobilize her. And, says Dr. Abrams, it would take four to six hours of consistent exposure to incapacitate Robinson for a day or more. Only if a reaction precipitated a sinus infection would Robinson be incapacitated for three days or more.

From October 2000 until her termination in August 2004, Robinson was an internal auditor for Discover, which during Robinson's employment was a unit of Morgan Stanley. When she started her job, Robinson informally told her supervisor that a previous employer had accommodated her sensitivity to perfumes and fragrances. The supervisor said that she could not prohibit other employees from wearing perfumes and fragrances. But when Robinson's work area was refurbished in 2002, she was seated in a location that minimized her exposure to perfumes and fragrances. Robinson also was allowed to use an alternate rental-car service that provided fragrance-free vehicles. These changes improved the situation for a time.

Not until August 2003 did Robinson first inform Human Resources of her condition. An HR employee, Tony Cavaliero, requested that Robinson get her doctor to complete a medical certification, which Dr. Abrams did. Dr. Abrams conveyed that Robinson has an "extremely high sensitivity to perfume and other fragrances" but did not suffer from a serious medical condition as defined by the Family and Medical Leave Act. *See* 29 U.S.C.A. § 2611(11); 29 C.F.R. § 825.114(a)(2). Dr. Abrams did not answer questions asking when the "disability" had been diagnosed, or what regimen of continuing medical treatment Robinson required. Dr. Abrams certified that Robinson could perform any kind of work and did not require a

reduced or intermittent schedule. Dr. Abrams did not respond to a question asking if Robinson was under any work restriction, but according to Robinson that is because Cavaliero told her that Dr. Abrams could skip that question since she would be contacted directly by a doctor hired by Discover. That physician, Dr. Miller, was told by Dr. Abrams in September 2003 that Robinson should avoid perfumes and fragrances. But Dr. Abrams also told Miller that her opinion had not been substantiated by any clinical tests, and that only an allergist could clarify the source of Robinson's symptoms.

After that Robinson continued to complain to Cavaliero about exposure, mostly from perfumes and colognes worn by coworkers. Robinson singled out one employee whose cologne she did not like, and he was told by management to stop wearing it. In October 2003 Cavaliero told Robinson to solicit ideas from Dr. Abrams about how Discover might alleviate her symptoms. Robinson did not do so. In December 2003 Cavaliero asked her to provide an updated medical certification. Robinson did not do that either. She had no further contact with HR until after February 2004, when she wrote a memorandum to management saying she had uncovered irregularities in the auditing department. An investigation ensued, and the company ultimately concluded that no action was warranted. The following month when Robinson mentioned her alleged condition to members of the investigative team, the vice president for HR, Kerry Piercy, sent Robinson an e-mail with an attached medical certification form. Robinson did not return it. In May, though, she complained to HR that her manager, Vesela Zlateva, was wearing perfume to retaliate for the February memorandum. Piercy asked Zlateva to refrain from wearing perfume.

On August 6, 2004, Zlateva sent Robinson a memorandum outlining the numerous steps Discover had taken since February 2002 to address her inability to meet deadlines, deliver audit results, interact with coworkers, and accept feedback from supervisors, and warned her of the possibility of a prompt termination. Five days later Robinson again complained to Piercy about exposure to perfumes and fragrances. Piercy responded by e-mail on August 13 reminding Robinson that in March she had asked for but never received an updated medical certification, which Robinson needed to supply. After meeting with Robinson in person, Piercy sent Robinson a follow-up e-mail on August 18 informing her of the steps she could take to reduce her exposure to irritants while Discover awaited the return of her updated medical certification. Still Robinson did not return the form. Meanwhile, one of Robinson's supervisors sent an e-mail to all employees in her department requesting consideration for employees with sensitivities to perfumes.

Robinson was fired on August 24. When informed of that decision, she produced a second medical certification that Dr. Abrams had signed on August 17. This time Dr. Abrams said that Robinson was experiencing severe "allergic" reactions to perfumes and fragrances and that her condition constituted a serious health condition as defined by the FMLA. Dr. Abrams related that Robinson needed to avoid perfumes and fragrances, and could not work if an allergic reaction occurred. But Dr. Abrams also stated that Robinson did not require an intermittent or reduced work schedule. Dr. Abrams later explained during this litigation that Robinson had suffered from sinus infections with increasing frequency after the first medical certification, and

that is why on the second form the doctor had characterized her as having a serious health condition. But Dr. Abrams also acknowledged that she could not say whether Robinson's sinus infections had resulted from exposure to perfumes and fragrances.

At summary judgment the district court assumed that Robinson is impaired by a sensitivity to perfumes and fragrances. But the court also concluded that Robinson could not establish that this sensitivity constitutes a "disability" within the meaning of the ADA, or that Discover thought it was. The court added that, in any event, because Discover provided special seating assignments and a fragrance-free rental car, informed specific employees to cease wearing perfumes and fragrances, and sent an e-mail to Robinson's department requesting consideration for her sensitivities, it had done what it could to accommodate her impairment. We review these conclusions *de novo. See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 780 (7th Cir. 2007). To survive summary judgment, Robinson had to produce evidence from which a reasonable jury could conclude that Discover failed to accommodate an actual or assumed disability. *See EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005); *Nese v. Julian Nordic Constr. Co.,* 405 F.3d 638, 641 (7th Cir. 2005). Summary judgment was appropriate in this case because Robinson produced no evidence that her symptoms actually stem from exposure to perfumes and fragrances, or that her alleged condition is or was regarded by Discover as a disability within the meaning of the ADA.

The ADA defines a disability as an impairment that prevents or significantly restricts an individual from performing a major life activity that the average person can perform. *See* 42 U.S.C. § 12102(2); *Williams v. Excel Foundry & Mach., Inc.*, 489 F.3d 309, 311 (7th Cir. 2007). This standard was designed to be demanding. *See Toyota Motor Mfg., Ky., Inc., v. Williams*, 534 U.S. 184, 197 (2002). A permanent condition is not disabling simply because infrequent flare-ups may produce severe symptoms; the question is whether the condition, not the occasional flare-up, is disabling. *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 952 (7th Cir. 2000); *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 440 n.4 (7th Cir. 2000). We are less likely to find an individual disabled if she can easily take medicine to ameliorate the condition. *See Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482 (1999); *Moore*, 221 F.3d at 952 n.4.

Here we have virtually no medical evidence with which to assess Robinson's alleged condition. Dr. Abrams's opinions were based entirely on her conversations with Robinson, and though Dr. Abrams told Robinson that she needed to consult an allergist, Robinson never obtained an evaluation. Thus, all this record shows is that Robinson has experienced symptoms she attributes to an allergy or sensitivity that apparently no doctor has tried to substantiate. *See Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002) (holding that summary judgment for defendant was properly granted where plaintiff claiming violation of Rehabilitation Act had failed to produce medical records or evaluations to substantiate her belief that previously diagnosed impairment was causing specific physical symptoms).

Even if Robinson does have an allergy or severe sensitivity to perfumes and fragrances, she cannot establish that her impairment is a disability under the ADA definition. Robinson admitted that she functions normally when she is not exposed to perfume. And the typical exposure leads only to symptoms that resemble those of an uncomfortable cold, which does not

substantially impair a major life activity. Even Robinson's most severe attacks have not impaired a major life activity. Robinson insists that her condition interferes with breathing, which is a major life activity. *See Squibb*, 497 F.3d at 781 n.3. But Dr. Abrams testified that Robinson can always breath through her mouth, even when her nasal passages become congested, and a jury could not reasonably conclude that the resulting discomfort qualifies as a *substantial* limitation on her ability to breath. *See Ammons-Lewis v. Metro. Water Reclamation Dist. Of Greater Chi.*, 2004 WL 2453835, at 3 (N.D. Ill. 2004). Robinson, moreover, acknowledged that she can take medication to alleviate her worst symptoms, and the worst attacks—"several" during her four years' employment at Discover—were too infrequent to have elevated her condition to a disability. *See Moore*, 221 F.3d at 952. Other circuits that have considered similar issues have held that a peanut allergy does not substantially impair the breathing of an otherwise healthy person, *see Land v. Baptist Med. Ctr.*, 164 F.3d 423, 424-25 (8th Cir. 1999), and that a condition which reduced a plaintiff's lung capacity by 50% was not evidence of a substantial impairment, *see Robinson v. Global Marine Drilling Co.* 101 F.3d 35, 37 n.2 (5th Cir. 1996). *Cf. Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1250-51 (10th Cir. 2004) (denying summary judgment where plaintiff's asthma was triggered by cigarette smoke, pollen, mold, dust, pets, paint, perfumes, certain foods, chemicals, cold air, or stress, and restricted her breathing all the time).

Finally, a jury could not reasonably find that Discover "regarded" Robinson as disabled even if she is not. *See* 42 U.S.C. § 12102(2); *Nese,* 405 F.3d at 641. Robinson points out that she told management of her condition, and that Dr. Abrams told Dr. Miller that she should avoid perfumes and fragrances. But the company's awareness of her complaints does not mean that Discover considered her *disabled*. Discover did not even receive confirmation that Robinson suffers from an allergy or sensitivity to perfumes and fragrances; Miller asked for confirmation and was told by Dr. Abrams that she could not give it because she had not tested—and was not qualified to test—Robinson. *See Rooney v. Koch Air*, *L.L.C.*, 410 F.3d 376, 381 (2005). Discover repeatedly asked Robinson for medical clarification of her condition. What Discover knew is that, at most, Dr. Abrams had represented without objective testing that Robinson was extremely sensitive to perfumes and fragrances and should avoid them. Dr. Abrams had never tried to verify her "diagnosis" or to pin down the specific irritants causing Robinson's symptoms. Nor had Dr. Abrams offered any opinion concerning the extent to which Robinson needed to be isolated "in a bubble" from her coworkers. Indeed, Robinson's failure to provide medical documentation to Discover would be fatal to her claim even if she was disabled; if a disabled employee's condition is unclear, the employee must provide medical clarification of the accommodations required in response to the employer's request. *Sears,* 417 F.3d at 804; *Steffes v. Stepan Co.,* 144 F.3d 1070, 1072-73 (7th Cir. 1998).

We have examined Robinson's other objections to the grant of summary judgment, and none has merit. Accordingly, the judgment is AFFIRMED.