NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2010
Decided August 17, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-2987

| | |
|---|---|
| FLORA L. KIMBLE, | Appeal from the |
| *Plaintiff-Appellant*, | United States District Court for the |
| | Northern District of Illinois, |
| *v.* | Eastern Division. |
| | |
| JOHN E. POTTER, | No. 06-cv-02589 |
| Postmaster General, | |
| United States Postal Service, | Charles R. Norgle, Sr., |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Flora Kimble suffers from dizzy spells that make it hazardous for her to drive long distances. In this lawsuit under the Rehabilitation Act, she claims that her former employer, the United States Postal Service, failed to accommodate her condition and then terminated her because of it. The district court granted summary judgment for the Postal Service, reasoning that Kimble had failed to demonstrate that she is disabled for purposes of the Act. We affirm the judgment.

Kimble, who is now 58, worked as a distribution clerk at the Postal Service's Irving Park Road Processing and Distribution Center ("Irving Park facility"), which is very close to O'Hare International Airport on Chicago's far northwest side. In June 1999 she was diagnosed with a vertebral artery dissection and a minor stroke, and after a hospitalization

and home recovery, her doctor cleared her to return to work in September 1999. He recommended, however, that she not drive at night or for more than 30 minutes at a time because she was experiencing disequilibrium (dizziness).

Before her stroke Kimble drove to work from her home on the north side of Chicago, and the district court took judicial notice that she lived roughly 18 miles from the Irving Park facility.[1] Mindful of her doctor's recommendation that she not drive long distances, Kimble requested a temporary assignment to the Postal Service's downtown Chicago facility, which was closer to her home. The Postal Service granted her a 30-day assignment to that facility and several times extended the temporary change at Kimble's request. While working at the downtown facility, Kimble was not under any medical restriction other than an order from her doctor not to lift anything over ten pounds, though it is unclear from the record whether her job had ever required her to do so in the first place. In the meantime, although the Postal Service had warned Kimble that her reassignment was only temporary, she bought a home on Chicago's south side in October 1999, moving her even further away from the Irving Park facility. The district court took judicial notice that Kimble's new address was roughly 29 miles from that facility.

In April 2001, after permitting Kimble to work downtown for 15 months, the Postal Service told her that she had to report back to her original assignment at the Irving Park facility. Kimble never returned, citing her inability to drive there from her home on the south side. She first used all of her vacation and sick leave and then took unpaid leave under the Family and Medical Leave Act. She provided monthly doctor's notes explaining her absence until September 2001, when her health insurance expired. The Postal Service sent her notice the following month that she would be terminated if she did not submit medical information justifying her absence. Kimble did not respond, and she was terminated in November 2001.

Kimble lodged an administrative complaint of discrimination with the Postal Service in June 2002. She claimed that the Postal Service failed to accommodate her medical condition by requiring her to return to the Irving Park facility and had fired her on account of a disability. Kimble requested a hearing before an EEOC administrative law judge, who concluded in September 2004 that she failed to prove discrimination. The EEOC affirmed that decision on appeal in February 2006, and Kimble timely filed this lawsuit claiming disability discrimination under the Rehabilitation Act, 29 U.S.C. § 794, as well as age discrimination under the Age Discrimination in Employment Act, 29 U.S.C.

---

[1] At summary judgment the Postal Service submitted driving directions from an online mapping site calculating the distance to the Irving Park facility as 18.73 miles and the driving time as 37 minutes, though it is unclear whether that time accounts for any traffic.

§§ 621-634.  The district court granted summary judgment for the Postal Service, reasoning that Kimble could not prevail on either claim because she is not disabled for purposes of the Rehabilitation Act and lacked evidence that her age played a role in the Postal Service's decision to fire her.

We review de novo the district court's grant of summary judgment, construing all facts and reasonable inferences in Kimble's favor.  *See Hancock v. Potter*, 531 F.3d 474, 478 (7th Cir. 2008).  On appeal Kimble has abandoned her claim of age discrimination and pursues only her claim under the Rehabilitation Act.  To succeed on that claim, Kimble needed first to establish that she is "disabled" as the term is defined by the Act,[2] *see Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008), and her only argument on appeal is that the district court erred in concluding that she does not satisfy the definition.  It is undisputed that Kimble suffers from chronic disequilibrium syndrome, and she asserts that this condition alone is sufficient to qualify her as disabled for purposes of the statute.

Kimble's shortcoming, however, is that she conflates diagnosis with disability.  *See Burnett v. LFW Inc.*, 472 F.3d 471, 483 (7th Cir. 2006).  A person with a physical or mental impairment qualifies as disabled under the Rehabilitation Act only if the condition substantially limits a major life activity.  29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1)(A); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 755 (7th Cir. 2006).  Kimble has never identified a major life activity that is affected by her disequilibrium.  In her appellate brief, she states that vertigo is a symptom of her disequilibrium and that people with vertigo often report difficulty with walking, which is a major life activity.  *See* 29 C.F.R. § 1630.2(i).  But this general proposition does not help her because she did not argue, let alone present any evidence at summary judgment, that she personally has trouble walking.  *See Burks*, 464 F.3d at 757 (explaining that plaintiff may not establish substantial limitation in major life activity by submitting only general information about medical condition); *Branham v. Snow*, 392 F.3d 896, 903 (7th Cir. 2004) (same).

Nor does Kimble argue that driving is a major life activity, an argument that is, in any event, foreclosed by our recent decision in *Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009).  We explained in *Winsley* that unlike the other activities that have been classified as "major," driving is not "so important to everyday life that almost anyone would consider himself limited in a material way if he could not" drive.  *Id.*  Moreover, unlike any

---

[2] The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act ("ADA").  29 U.S.C. § 794(d).  The ADA Amendments Act of 2008 expanded the ADA's definition of "disability," but the amendments are not retroactive and thus do not apply to Kimble's case.  *See Fredricksen v. United Parcel Service, Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009).

other recognized major life activity, driving is a privilege subject to revocation, and its importance varies greatly based on the individual's geographic location. *Id.* at 603-04. Our decision in *Winsley* is consistent with every federal appellate decision on the issue. *See Hawkins v. Soc. Sec. Admin.*, 368 F. App'x 136, 140 (Fed. Cir. 2010) (nonprecedential); *Kellogg v. Energy Safety Servs. Inc.*, 544 F.3d 1121, 1126 (10th Cir. 2008); *Robinson v. Lockheed Martin Corp.*, 212 F. App'x 121, 124 (3d Cir. 2007) (nonprecedential); *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329-30 (11th Cir. 2001); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998); *but see Anderson v. N.D. State Hosp.*, 232 F.3d 634, 636 (8th Cir. 2000) (assuming without deciding that driving may be a major life activity).

As Kimble points out, *Winsley* left open the possibility that a person who is unable to drive might qualify as disabled if the inability substantially limits her capacity to perform other major life activities such as working. 563 F.3d at 604. Hoping to fit that bill, Kimble argues that her inability to reach employers located more than 30 minutes' driving distance from her home means she is substantially limited in her ability to work. But a substantial limitation on working means that a plaintiff is unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities" within the "geographical area to which [she] has reasonable access." 29 C.F.R. § 1630.2(j)(3); *see Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007). It might be the case that a person with Kimble's driving restriction living in a remote, rural area would be substantially limited in the ability to work because few, if any, jobs would be reasonably accessible to her. Kimble, however, lives in Chicago and therefore has access to an abundance of jobs that she can reach by car in under 30 minutes and many more that are accessible on foot or by public transportation. Thus, although Kimble's disequilibrium may prevent her from driving herself to the Irving Park Postal Service facility or to other workplaces more than 30 minutes' driving distance from her home, she is not otherwise limited, let alone substantially so, in her ability to work.

Finally, Kimble takes issue with the district court's observation that her move to the south side of the city increased her driving time to the Irving Park facility. She concedes that courts may take judicial notice of geographic distances but seems to argue that it was improper for the district court to infer that her 29-mile commute from the south side was longer than her 18-mile commute from the north side because driving times cannot necessarily be predicted by geographical distance alone. While this proposition may be true in the abstract, it defies common sense to argue in this case that an additional 11 miles of city driving would not increase Kimble's commute. In any event, the fact that Kimble increased her driving time by moving to the south side was simply an observation by the district court and is irrelevant to the question whether she is disabled.

The district court's grant of summary judgment for the Postal Service is AFFIRMED.